**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| MIMEDX GROUP, INC., | |
| Plaintiff, | Case No. 3:18-cv-00327-TJC-PDB |
| v. | |
| FRASER PERRING, et al., | |
| Defendants. | |

**DEFENDANT FRASER PERRING'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Comes Now, Defendant Fraser Perring, and moves to dismiss Plaintiff MiMedx Group, Inc.'s Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this motion, Defendant Perring states as follows:

**I.     INTRODUCTION**

Things are not going well for MiMedx. The company is under investigation by multiple government agencies, including the U.S. Department of Justice (DOJ) and the Securities and Exchange Commission (SEC), for paying illegal bribes to doctors and materially overstating its revenues and profits. In May of this year, a federal grand jury indicted three employees of the U.S. Department of Veterinary Affairs (VA) for accepting illegal bribes from MiMedx to promote MiMedx's products. Further, due to findings in an internal company investigation into its revenue recognition practices, MiMedx has delayed publishing its 2017 financial report, and announced in June that it must withdraw and restate its financial statements for the five prior consecutive years. And just this week, MiMedx forced several of the company's senior executives, including its CEO and Chairman of the Board, to resign.

With the announcement of these facts, MiMedx's share prices have, predictably, plummeted. But rather than taking responsibility for its illegal and deceptive conduct, MiMedx has instead attempted to divert attention from itself by refocusing the scrutiny on short sellers who have done nothing more than exercise their constitutional right to disseminate their opinions about MiMedx's systemic illegal conduct—all of which are substantiated by myriad data, including the facts described above.

The issue for the Court is whether under these facts MiMedx has plausibly alleged a claim for defamation and unfair trade practices against Defendant Fraser Perring (or any other Defendant). The answer is no. The defamation claim must fail, because, as a sister federal court analyzing near-identical allegations brought by MiMedx has already held, MiMedx has failed to allege any actionable defamatory statements and has failed to plausibly allege facts showing actual malice. *MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 847014, No. 17-cv-07568 (S.D.N.Y. Jan. 12, 2018). For the same reasons, the claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTP) also fail. Thus, Defendant Perring respectfully requests that the Court dismiss MiMedx's Complaint with prejudice.

## II.   FACTS

MiMedx is a publicly traded company that manufactures and sells biomaterial products. Compl. ¶ 3; *MiMedx,* 2018 WL 847014, at *1. It alleges in this lawsuit that its stock has plummeted in value, not because of any wrongdoing on the part of MiMedx, but because short sellers, including Defendant Perring, have published defamatory statements on the internet. MiMedx asserts claims of libel and violation of FDUTPA against all Defendants.

A.  **In the Wake of Government Investigations, Indictments, and Company Announcements, MiMedx's Share Values Decline.**

While MiMedx would like to blame its legal and financial woes on Defendants and other alleged short sellers, the undeniable facts are that MiMedx is steeped in allegations of bribery and revenue inflation, and these allegations have been corroborated by substantial publicly available information. The timeline of some of the key public events and announcements is as follows:[1]

- On September 21, 2017, MiMedx announced that after several former employees alleged that MiMedx was "channel stuffing" (a strategy of inappropriately booking sales of products that have not been ordered), the company "received a subpoena from the SEC that appears to relate to these former employees' allegations."[2]

- On February 20, 2018, MiMedx announced that due to an investigation by an internal audit committee into, among other things, the accounting treatment of distributor contracts, the company "will not be in a position to release its financial results" for 2017.[3]

---

[1] Defendant Perring respectfully requests that the Court take judicial notice of the facts and supporting exhibits that follow, including: (1) MiMedx's public statements published on its website, (2) the federal indictment, (3) the Wall Street Journal and Bloomberg articles (the fact and content of the publications *only*, not the truth of the matter asserted), and (4) the publicly available data regarding MiMedx's stock performance. A "district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010). The court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy could not be reasonably questioned." *Id.* (citing Fed. R. Evid. 201(b)). The court may also consider documents attached to a motion to dismiss that are (1) central to the plaintiff's claim, and (2) undisputed. *Id.* The facts and exhibits cited below are not subject to reasonable dispute, are capable of ready determination, are germane to MiMedx's allegations of defamation, and are undisputed. Therefore, they are the proper objects of judicial notice and should be considered on this motion.

[2] Ex. A, MiMedx Press Release, "MiMedx Provides Information on Its Interaction with the SEC," 9/21/2017, available at https://mimedx.gcs-web.com/news-releases/news-release-details/mimedx-provides-information-its-interaction-sec.

[3] Ex. B, MiMedx Press Release, "MiMedx Pospones Release of its Fourth Quarter and Fiscal Year 2017 Financial Results," 2/20/2017, available at https://mimedx.gcs-web.com/news-releases/news-release-details/mimedx-postpones-release-its-fourth-quarter-and-fiscal-year-2017.

- On February 22, 2018, the Wall Street Journal reported that MiMedx had failed to report financial payments to more than 20 doctors as required by law.[4]

- On February 26, 2018, Bloomberg reported that the DOJ was investigating whether MiMedx engaged in channel stuffing and, separately, whether it overcharged government agencies, including the VA, for its products.[5]

- On May 8, 2018, a federal grand jury indicted three VA health care providers for accepting bribes from MiMedx in exchange for ordering, purchasing, and using MiMedx products on VA patients in violation of anti-bribery laws.[6]

- On June 7, 2018, MiMedx announced that due to an internal investigation into accounting treatment of sales and distribution practices, the company needed to restate all consolidated financial statements from 2012 through 2017, and that all communications and financial information published in late 2017 and 2018 should no longer be relied upon. MiMedx also announced the departure of several top executives, including its CFO.[7]

- On July 2, 2018, MiMedx announced that several executives, including its CEO and Chairman, had resigned. The resignation was based on information discovered in the company's ongoing investigation and the Board's business judgment.[8]

In the midst of this company crisis, MiMedx's share prices have plummeted from a high of $17.21 in January of 2018 to $3.98 as of July 3, 2018, as reflected in the below publicly available chart based on daily financial data reported by the NASDAQ index. Notably, the three largest declines have tracked the company's announcements of (1) the delay of the release of its

---

[4] Ex. C, "MiMedx, Gast-Growing Developer of Tissue Graft Products, Didn't Report Payments to Doctors," Wall Street Journal, 2/22/2018, available at https://www.wsj.com/articles/mimedx-fast-growing-developer-of-tissue-graft-products-didnt-report-payments-to-doctors-1519300800.

[5] Ex. D, "U.S. Probes MiMedx's Federal Contracts, Accounting," Bloomberg, 2/26/2018, available at https://www.bloomberg.com/news/articles/2018-02-26/u-s-is-said-to-probe-mimedx-s-federal-contracts-accounting.

[6] Ex. E, *United States v. Donna Becker, et al.*, No. 6:18CR481, Indictment (D. S.C. May 8, 2018).

[7] Ex. F, MiMedx Press Release, "Company to Restate Financial Statements for Fiscal Years 2012 through 2016, and Interim Periods of 2017 Related to Revenue Recognition," 6/7/2018, available at https://mimedx.gcs-web.com/news-releases/news-release-details/mimedx-restate-certain-historical-financial-statements.

[8] Ex. G, MiMedx Press Relase, "MiMedx Announces Leadership Changes and Corporate Actions," 7/2/2018, available at https://mimedx.gcs-web.com/news-releases/news-release-details/mimedx-announces-leadership-changes-and-corporate-actions.

2017 financial statement (2/20/2018—share price dropping from $14.47 to $8.75), (2) the need to restate five years of financial statements (6/7/2018—share price dropping from $8.21 to $6.29), and (3) the forced resignation of its CEO and Chairman (7/2/2018—share price dropping from $6.39 to $3.93).

**Chart 1: MiMedx's 2018 YTD Stock Performance[9]**



**B.     The Alleged Defamatory Communications at Issue.**

Despite the above facts, MiMedx blames the demise of its share values not on its own announcements about the company's legal and financial troubles, but on what it contends are defamatory publications by Defendants and other short sellers.  With respect to Defendant Perring, the communications at issue are a series of research reports published by Viceroy Research Group, which MiMedx alleges is directed by Defendant Perring.

---

[9] This data is available at https://finance.yahoo.com/quote/MDXG?p=MDXG.

The reports, which are attached to MiMedx's Complaint as Exhibits 4 through 26, all have a similar structure. Importantly, page two of every single attached report contains a prominent page-long disclaimer under the heading: "**Important Disclaimer—Please read before continuing**." Compl., at Exs. 4-26, p. 2 (emphasis in original). The first paragraph under the disclaimers clearly and unambiguously states that the report reflects nothing more than the authors' opinions:

> This report has been prepared for educational purposes only and expresses our opinions. This report and any statements made in connection with it are the authors' opinions, which have been based upon publicly available facts, field research, information, and analysis through our due diligence process, and are not statements of fact. All expressions of opinion are subject to change without notice, and we do not undertake to update or supplement any reports or any of the information, analysis and opinion contained in them. We believe the publication of our opinions about public companies that we research is in the public interest. We are entitled to our opinions and to the right to express such opinions in a public forum. You can access any information or evidence cited in this report or that we relied on to write this report from information in the public forum.

*Id.*

The disclaimers further state that while the information cited in the reports is obtained from public sources with a good faith belief as to their accuracy and reliability, "all such information is presented 'as is,' without warranty of any kind—whether express or implied." *Id.* The disclaimers further urge the reader to "*[t]hink critically about our opinions and do your own research and analysis before making any investment decisions*." *Id.* (emphasis added).

Finally, the disclaimer fully discloses the financial interest of its authors:

> As of the publication date of this report, you should assume that the authors have a direct or indirect interest/position in all stocks (and/or options, swaps, and other derivative securities related to the stock) and bonds covered herein, and therefore stand to realize monetary gain in the event that the price of either declines.

*Id*.

The content of the reports address what the authors believe to be substantial MiMedx's financial and legal risks, predominately based on evidence that the company is engaged in channel stuffing, paying bribes to doctors, and overcharging government agencies for its products. *See generally* Compl., Exs. 4-26. Importantly, the reports provide detailed citations with hyperlinks to the evidence that the authors believe support their opinions. *See generally id*. This include statements in complaints and other documents filed in civil lawsuits by MiMedx former employees, MiMedx's financial statements, internal MiMedx emails and other documents that have become publicly available, and a number of reports from reputable media sources (e.g., the Wall Street Journal and Bloomberg). *See generally id.* In many instances the reports incorporate images of the source documents and highlight the precise statements that authors believe support their opinions. *See generally id.*

The reports are also replete with rhetoric, hyperbole, and qualifying language indicating that the statements made are expressions of opinion. The instances are too many to be recounted here, but there is hardly a page in any of the challenged reports that does not contain such language. This begins with the first page of the very first report, which contains language such as:

- "While the outward picture [of MiMedx] is one of a strong central business and sales organization *the truth is far from it*";

- "Vicereoy has *serious reservations* as to whether MiMedx properly disclosed" certain connections of its employees to a bribery scheme at another medical products company;

- "Viceroy's analysis found evidence *supporting* [former employees' claims of channel stuffing and improper revenue recognition practices] in MiMedx's financial accounts— *there is no smoke without fire*;"

- "MiMedx's pricing policy *suggests* an attempt to conceal or draw attention away from purchase orders;"

- "In light of the evidence we have gathered, Viceroy *believes* MiMedx is *at serious risk* of losing government supply certifications and the sales privileges therein which comprise a substantial portion of revenues;" and

- "*If allegations are true*, Vicreoy *believes* MiMex is valued at $0."

(Compl., Ex. 4, at p. 1) (emphasis added).

This hyperbolic, qualifying, and loose style continues in the initial report, as well as all other publications. Again the instances are too many to be recounted here, but examples include the following language:

- "Viceroy believe[s] MiMedex[] has continued its trend of extremely misleading behaviors which reinforce our belief that MiMedx is uninvestible." (Compl., Ex. 5, at p. 1);

- "We believe that [MiMedx's rebuttal to Viceroy's reports] represents a misaligned focus between the organization's strategy in crisis control and [CEO] Pete Petit's systematic attempts to clear his name and slander Viceroy's investigations…. All whistleblowers [that have approached Viceroy] are extremely fearful of physical and legal retribution from MiMedx…. As MiMedx seems incapable of coming clean, Viceroy will continue to publish its findings and the information provided to us by former employees in a series of shorter articles." (Copml., Ex. 6, at p. 1).

- "While Viceroy pieces together damning evidence of MiMedx's dwindling relationship with the Department of Veteran Affairs, investors should question the discretionary nature of MiMedx's aggressive litigation…. We believe MiMedx intentionally turns a blind eye to certain employees setting up their own distributorships especially where it is likely to benefit MiMedx revenue schemes." (Compl., Ex. 7, at p. 1).

- Viceroy continues piecing together damning evidence of MiMedx's dwindling relationship with the Department of Veteran Affairs…. MiMedx refuse[s] to acknowledge the facts. In what appears to be a blatant disregard for the SEC rules and the need for 8-K filing, MiMedx recently filed an 8-K… ignoring the elephant in the room: the SEC subpoena."

### C. MiMedx Files and then Dismisses a Near-Identical Action Against Viceroy After Receiving an Adverse Ruling.

On October 4, 2017, MiMedx filed a suit against Viceroy and other alleged short sellers in the United States District Court for the Southern District of New York, bringing various

8

defamation and tort claims based on near-identical allegations raised here, case styled *MiMedx Group, Inc., et al. v. Sparrow Fund Mgmt., LP*, Case No. 1:17-cv-07568-PGG-KHP. In that case, several of the defendants moved to dismiss the complaint, and, in January 2018, the magistrate judge issued a report and recommendation that the complaint be dismissed against the moving defendants. *MiMedx,* 2018 WL 847014, at *1. The Court ruled that the challenged statements were not actionable because (1) given their context, they were clearly statements of opinion, and (2) that, in any event, MiMedx had failed to plausibly allege that the moving defendants acted with actual malice—the scienter required when the statements at issue are directed at a public company over issues of public concern. *Id.* at 6-8.

The court did not make any findings on the claims against Viceroy, as Viceroy had not been served in the action or filed a motion to dismiss. *Id.* at *11 n. 4. The court did, however, note that "[f]or the reasons set forth above, MiMedx's claims against Viceroy may not survive a motion to dismiss filed by Viceroy." *Id.* After receiving this adverse ruling, MiMedx voluntary dismissed its claim against Viceroy in the New York action, and refiled a near-identical complaint in this case against individuals and entities it alleges control Viceroy.

### III.  ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level…." *Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271 (M.D. Fla. 2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level…."). While "a defamation claim may be pleaded generally, it must nonetheless plead facts that plausibly articulate that a defamation has occurred." *Borislow v. Cannacord Genuity Group, Inc.*, No. 14-80134-CIV,

9

2014 WL 12580259, at *1 (S.D. Fla. June 27, 2014). Where a challenged statement cannot plausibly have a defamatory effect, a "court is justified in dismissing the complaint for failure to state a cause of action." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001); *Borislow*, 2014 WL 12580259, at *1. Courts "***routinely dismiss defamation claims on motions to dismiss***." *Borislow*, 2014 WL 12580259, at *1 (citing multiple cases) (emphasis added).

A. **MiMedx Has Failed to Plausibly Allege a Defamation Claim.**

Defamation "under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter covering a public official [or a matter of public concern], or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018).[10] Here, MiMedx's defamation claim fails as a matter of law because (1) the challenged statements are non-actionable opinions, and (2) MiMedx has failed to plausibly allege actual malice on the part of Defendant Perring (or any other Defendant).

1. **The Challenged Statements are Protected Statements of Opinion.**

True "statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Id.* Whether a statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Id.* at 1262-63

---

[10] Defendant Perring does not concede Florida law applies to this action. However, the principles of defamation law raised by this motion are the same under the law of any state that arguably has a connection to this this dispute, including New York and Georgia. Therefore, because there is no conflict of laws, Defendant Perring will cite to Florida defamation law.

A statement of pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. *Id.; Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996). Pure opinion "is sometimes characterized as 'rhetorical hyperbole.'" *Fortson v. Colangelo,* 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006). Although "rhetorically hyperbolic statements may at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target." *Id.* at 1378-79 (citations omitted).

In "determining whether an alleged defamatory statement is an expression of fact or an expression of pure opinion and/or rhetorical hyperbole, context is paramount." *Id.* at 1379. The test requires that the court examine the statement in its totality and the context in which it was uttered or published, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Turner*, 879 F.3d at 1263; *Colodny*, 936 F. Supp. at 923; *Fortson*, 434 F. Supp. 2d at 1378. The "court must consider all the words used, not merely a particular phrase or sentence." *Colodny*, 936 F. Supp. at 923; *Fortson*, 434 F. Supp. 2d at 1378. Finally, "the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it published." *Id.*

Applying these principles, the alleged defamatory statements in this case are non-actionable statements of opinion for several reasons. *First*, the disclosures in all the reports clarifying that they are purely expressing opinions, with no guaranteed accuracy, published by a group who has a financial interest in the decline of MiMedx's share values, render the publications non-actionable opinions as a matter law. To this end, *Borislow, supra,* is directly on point. 2014 WL 12580259, at *2-3. There, as here, the defendant published a negative

analytical report about a company and its CEO. *Id.* There, as here, the report had upfront disclosures stating that all statements in the report were opinions only and that the author did not guarantee the accuracy of any information contained therein. *Id.* On these fact, the court dismissed the defamation claims brought against the publisher as pure opinion, holding that "[c]ourts that have considered almost identical disclosures have concluded that where, as here, the 'overall context of the article' made clear that the article was an opinion, the challenged statements were non-actionable as a matter of law." *Id.; see also Turner*, 879 F.3d at 1264-65 (report with similar cautionary disclaimers not defamatory). This reasoning applies equally to the disclosures in this case.

*Second*, the alleged defamatory statements are not actionable because they are backed by detailed citations to evidence supporting the authors' conclusions. *Borislow* is again on point. There, the challenged report supported its opinion that the stock price would rise upon the departure of the company's CEO with factual data, including historical stock prices from the company. *Id.* In dismissing the defamation claims, the court held that comments based on disclosed or generally known data is not actionable: "Commentary or opinion based on facts set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel." *Id.* at *3; *see also Turner,* 879 F.3d at 1265 (same). Here, as described above, given the detailed citations to the publicly available evidence, with highlighted snapshots of the evidence incorporated into the body of the publications, the challenged statements are not, as a matter of law, "the stuff of libel."

*Third,* the challenged statements are replete with qualifying and hyperbolic language, which render the statements as a whole non-actionable. The allegedly defamatory publications are dominated by statements such as "damning evidence," "where there is smoke there is fire,"

that Viceroy "believe[s]" that MiMedx's shares are worthless "if the allegations are true," and that Viceroy "believe[s]" the company has "serious has serious legal risk" and is "uninvestible." Thus, no reader could reasonably conclude that the challenged statements are anything other than expressions of opinion. Under similar facts in suits brought against short sellers, including the near-identical suit MiMedx brought in New York, courts have held that such language renders the entirety of the challenged statements non-actionable. *MiMedx*, 2018 WL 847014, at *6-7 (holding that near identical statements about MiMedx and its employees engaging in "channel stuffing," "revenue fraud," and other "jailable offenses" are non-actionable opinions); *Silvercorp Metals, Inc v. Anthion Mgmt. LLC,* 2012 WL 3569952, at *1 (N.Y. Sup. Ct. N.Y. Cty. Aug. 16, 2012) (allegedly defamatory statements made as part of scheme to drive down stock price and profit from short positions were deemed to be nonactionable expressions of opinion); *Deer Consumer Prods, Inc. v. Little Grp*, 2012 WL 5983641, at *1 (N.Y. Sup. Ct. N.Y. Cty. Nov . 29, 2012) (same).

For these reasons, the challenged statements are non-actionable opinions, and MiMedx has failed to state a cognizable claim for defamation.

### 2. MiMedx Has Failed to Plausibly Allege Actual Malice.

Because MiMedx is a public company and the alleged defamatory statements in this case relate to a matter of public concern—i.e., allegations of widespread fraud and other misconduct by a public corporation—MiMedx must plead and prove that Defendant Perring acted with actual Malice. *See MiMedx,* 2018 WL 847014, at *8 (holding that MiMedx is subject to the actual malice standard); *Borislow*, 2014 WL 12580259, at *2 (applying actual malice standard to a CEO bringing a defamation suit against publisher of a negative analyst report on a public corporation).

To plead actual malice, MiMedx "must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Turner*, 879 F.3d at 1273.  This is a "subjective test, focusing on whether the defendant actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.*  Importantly, conclusory allegations that a defendant acted knowingly, recklessly, or deliberately avoided learning information is insufficient; the complaint must set forth facts demonstrating that Defendants acted in these ways.  *Id.* (affirming dismissal of complaint based on plaintiff's conclusory allegations that a defendant acted knowingly or recklessly).

Here, MiMedx has not and cannot plausibly allege actual malice.  The Complaint's allegations of knowledge are conclusory, with no facts alleged to support them.  Indeed, they are the identical allegations that the court rejected in MiMedx's New York defamation suit.  There, the court rejected MiMedx's conclusory allegations that the moving defendants knew that the statements made were untrue.  *MiMedx,* 2018 WL 847014, at *8.  The court further rejected MiMedx's argument that actual malice could be inferred based on MiMedx's denial of wrongdoing: "[A]llegations that a speaker knew of a plaintiff's denials of wrongdoing are insufficient to establish actual malice because any other rule would allow public figures to stifle criticism merely by denying accusations."  *Id.*  Thus, the court concluded that the defendant "was free to evaluate information he received from various sources when relaying his views and information by MiMedx to the shareholder, and his knowledge of MiMedx's denial of misconduct therefore does not establish malice."  *Id; see also Turner*, 879 F.3d at 1273 (affirming dismissal of complaint based on plaintiff's conclusory allegations that a defendant acted knowingly or recklessly).

MiMedx has once again failed to allege plausible facts establishing malice. Indeed, far from showing malice, the allegations in the Complaint and exhibits attached thereto demonstrate that Defendants have based their conclusions on myriad public data, all of which they have documented thoroughly and assiduously in their publications. The statements about MiMedx's improper revenue recognition practices have been corroborated by, among other things, the facts that MiMedx (1) has withdrawn its financial statements for the last five years, (2) has still not released its financials for 2017, and (3) has forced the resignation of its CEO and Chairman. *See* Exs. B, F & G. Likewise, the statements about MiMedx bribing doctors has been corroborated by, among other things, an independent Wall Street Journal investigation, and a federal indictment of three VA employees for accepting bribes from MiMedx. *See* Exs. C & E. These undeniable facts demonstrate that Defendants' allegedly defamatory statements are grounded firmly in corroborating evidence from multiple sources, including the MiMedx's own public statements. Thus, MiMedx's conclusory allegations that Defendants' knew the statements were false cannot support a defamation claim, particularly where the objective evidence indicates that the statements are, in fact, true.

B. **MiMedx Has Failed to Plausibly Allege a Claim Under the FUDTPA.**

MiMedx's claims under the FDUTPA are based entirely on the alleged defamatory statements at issue in its libel claim. *See* Compl. ¶ 85 ("Defendants acts offended established public policy against the dissemination of false, misleading and defamatory statements, and at the same time were immoral, unethical, unscrupulous, or substantially injurious to consumers, including MiMedx's customers, who have been dissuaded from doing business with the company due to Defendants' spurious and public allegations."). Thus these claims are subject to the same defenses as the defamation claim, including the First Amendment defenses. *See*

*Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 659 (7th Cir. 2006) (holding that First Amendment protections applied to claims brought under Illinois' unfair and deceptive trade practices act based on false or misleading representations of fact, and affirming summary judgment against plaintiff for failure to establish actual malice); *Colorado Boxed Beef Co. v. Sherwood Food Dist.*, No. 1:07-cv-394-ODE, 2007 WL 9706421, at *11 (N.D. Ga. April 10, 2007) (holding that statements that are not defamatory (e.g., statements of opinion) are not actionable under Georgia's unfair and deceptive trade practices act, and that constitutional privileges, including requirement of malice, apply).

As stated above, the challenged statements are protected and non-actionable statements of opinion, and MiMedx has not and cannot plead facts showing actual malice. Thus its claim under the FDUTPA also fails.

## CONCLUSION

For these reasons, Defendant Perring respectfully request that MiMedx's Complaint be dismissed with prejudice, that Defendant Perring be awarded his reasonable attorneys' fees and costs, and for any further relief the Court deems just and proper.

Dated: July 5, 2018                                    Respectfully Submitted,

                                                **KOCH PARAFINCZUK WOLF SUSEN**
                                                Attorneys for Defendant
                                                110 East Broward Boulevard
                                                Suite 1630
                                                Fort Lauderdale, FL 33301
                                                Telephone:     (954) 462-6700
                                                Facsimile:       (954) 462-6567

                                                By: /s/ Marcus J. Susen\_\_\_
                                                  MARCUS J. SUSEN, ESQ.
                                                  Fla. Bar No. 70789

Susen@kpwlaw.com
MARCUS J. SUSEN, ESQ.
For Service of Court Documents Only:
Pleadings@kpwlaw.com

ELIAS GUTZLER SPICER LLC

*/s/ Richard M. Elias*_____
Richard M. Elias (Pro Hac Vice to be Filed)
130 S. Bemiston, Suite 302
St. Louis, MO 63105
Phone: 314-274-3311
relias@egslitigation.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon all counsel of record on July 5, 2018 via the Court's CM/ECF system.

**KOCH PARAFINCZUK WOLF SUSEN**
Attorneys for Defendant
110 East Broward Boulevard
Suite 1630
Fort Lauderdale, FL 33301
Telephone:   (954) 462-6700
Facsimile:   (954) 462-6567

By:  /s/ Marcus J. Susen\_\_\_
MARCUS J. SUSEN, ESQ.
Fla. Bar No. 70789
Susen@kpwlaw.com
MARCUS J. SUSEN, ESQ.
For Service of Court Documents Only:
Pleadings@kpwlaw.com

17

ELIAS GUTZLER SPICER LLC

/s/ Richard M. Elias_____
Richard M. Elias (Pro Hac Vice to be Filed)
130 S. Bemiston, Suite 302
St. Louis, MO 63105
Phone: 314-274-3311
relias@egslitigation.com