IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| MIMEDX GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> FRASER JOHN PERRING; GABRIEL BERNARDE; AIDAN LAU; GANADABI LTD., and DOES 1-100, inclusive, <br><br> Defendants. | Case No. 3:18-cv-327-J-32PDB |

**PLAINTIFF MIMEDX GROUP, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT FRASER PERRING'S MOTION TO DISMISS**

*You have no idea, please put @viceroyresearch in this. . . . #sueme*

-Fraser John Perring

As set forth in detail in Plaintiff MiMedx Group, Inc. ("MiMedx")'s pleading, Defendant Fraser John Perring, through Viceroy Research and in his own personal capacity, has repeatedly made knowingly false statements of fact about MiMedx for his own selfish, financial gain. A short seller that once operated in the shadows, Perring has gleefully profited from his disparagement of MiMedx's name and reputation as a leader in the bio-pharmaceutical industry as the Company's stock price declined.

For all of his bluster, however, now that MiMedx has taken Perring at his word ("#sueme") and sought court redress for his wrongful conduct, Perring seeks to avoid discovery and moves to dismiss this case at the pleading stage by claiming that all of his purported "research reports" under the Viceroy Research moniker were nothing more than opinions. He cannot do so. As shown in the pleadings and herein, Perring's "reports" on

MiMedx contained numerous false representations of fact, which Perring intended for his audience to find compelling (otherwise they would not have had the desired effect). And while Perring uses generalizations to argue that he should be protected by the "pure opinion" doctrine, his Motion fails to actually address a *single* specific alleged instance of defamation in the Complaint. Further, Perring's argument that he did not act with "actual malice" toward MiMedx ignores the pages of allegations that he falsely impersonated MiMedx employees in e-mails and on social media in an attempt to provide additional support for his bogus "reports," and acted with reckless disregard for the truth. MiMedx's well-pleaded Complaint for Damages and Injunctive Relief and Demand for Jury Trial ("Compl."; ECF No. 1) easily survives Perring's thin Motion to Dismiss ("Motion"; ECF No. 11).

The failure of Perring's First Amendment arguments also dooms his bid to dismiss MiMedx's second claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), as his argument on FDUTPA merely incorporates the "opinion" and "malice" arguments presented earlier in his Motion. In any event, FDUTPA is separate and distinct from any libel claim. MiMedx's Complaint raised numerous well-pleaded allegations of Defendants' deceptive trade practice of impersonating current MiMedx employees to cause further injury. Perring's Motion should accordingly be denied in its entirety.

## BACKGROUND

Viceroy Research ("Viceroy"), a once-anonymous equity research and short selling firm, began its "short-and-distort" campaign against MiMedx in September 2017. Compl. ¶ 21. Viceroy was later exposed as three individuals: Perring, Gabriel Bernarde, and Aidan Lau, as acting through their company Ganadabi Ltd (collectively, "Defendants"). *See* ECF

Nos. 1-2 (Exhibit 1), 1-3 (Exhibit 2), and 1-4 (Exhibit 3). Through Viceroy's website, (http://www.viceroyresearch.org) Viceroy's Twitter account (@viceroyresearch), and Perring's person Twitter account (@AIMhonesty), Perring and Defendants disseminated, and continue to disseminate, numerous defamatory articles and social media posts about MiMedx and its employees to MiMedx's customers, shareholders, and the investing public at large. *Id.* at ¶¶ 1, 21, 56, 67. Though not exhaustive, Defendants' defamatory articles can be characterized in the following categories:

> (i) False and misleading statements of fact concerning alleged fraudulent sales practices (*Id.* at ¶¶ 23-36);
>
> (ii) False and misleading statements of fact concerning MiMedx's government certifications and unrelated lawsuits (*Id.* at ¶¶ 37-43);
>
> (iii) False and misleading statements of fact concerning related and physician-owned distributors (*Id.* at ¶¶ 44-46); and
>
> (iv) False and misleading statements of fact concerning alleged Medicare fraud. (*Id.* at ¶¶ 47-55.)

When their articles and tweets would not suffice, Defendants even went as far as to impersonate one or more current MiMedx employees pretending to be a whistleblower on alleged fraud occurring at MiMedx. *See id.* ¶¶ 71-76.

As Defendants engaged in their tortious conduct, MiMedx began to experience a substantial decline in its share price, which harmed company investors and negatively impacted the company's ability to do business and raise capital. Accordingly, MiMedx filed the Complaint against Perring and others for libel and violation of FDUTPA on March 6, 2018. ECF No. 1. MiMedx undertook substantial efforts to serve Defendants. ECF No. 6.

Eventually, after months of private investigation, MiMedx was able to serve Perring at his home on June 13, 2018, despite his public claim that service was ineffective. ECF No. 10.

Perring filed the instant Motion on July 5, 2018. ECF No. 11. Perring devotes a significant portion of his memorandum in support discussing irrelevant events, many of which occurred well after the filing of this Complaint. Perring even further requests this Court take judicial notice of these matters, submitting six articles and one federal indictment as exhibits, which have no impact on the fact that the reports and statements made by Perring are defamatory and actionable—the only issue presently pending before the Court.[1]

Notably, Perring's Motion barely attempts to identify any of MiMedx's specific allegations which he believes insufficient to state a claim for libel or FDUTPA. Even more telling, Perring does not even mention MiMedx's allegations regarding his and Defendants' posts on Twitter, which lack the same purported disclosure or disclaimer language as their articles, or their impersonation of current MiMedx employees. Instead, Perring hopes his non-specific, wholly conclusory arguments will cause the Court to overlook the specific allegations in the Complaint. Perring essentially argues that he was entitled to say whatever he wanted about MiMedx with impunity and for his own personal financial gain, so long as he couched some statements in the form of "I think" or "in my opinion." This is not how well-settled defamation law operates. Accordingly, the Motion should be denied.

---

[1] "[A] court may refuse to take judicial notice of facts that are irrelevant to the proceeding or (in certain contexts) otherwise excludable under the Federal Rules." *United States v. Falcon*, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997).

## LEGAL STANDARD

When considering the sufficiency of a pleading challenged under Federal Rule of Civil Procedure 12(b)(6), the district court is required to accept all "allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A pleading survives if it passes the plausibility pleading standard—that is if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## ARGUMENT

### I. MiMedx Has Sufficiently Stated a Claim for Libel under Florida Law

With little citation to the very Complaint he wishes to dismiss, Perring asks this Court to ignore MiMedx's well-pleaded libel claim in favor of his argument that Defendants merely expressed their opinion on MiMedx's business practices. Not so. As alleged, Defendants consistently made affirmative, false and highly misleading statements of facts about MiMedx in several fora, including via online "research reports," Twitter posts, and falsified e-mails.

A claim for libel under Florida law has four elements (1) a false[2] statement of fact published by the defendant; (2) concerning the plaintiff; (3) to a third party; and (4) the plaintiff suffered damages from the false and defamatory publication. *Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002). Purported opinions are actionable where a defendant makes statements "sufficiently factual to be susceptible of

---

[2] Notably, falsity is not a required element under Florida law as "[p]ublication of a true statement if done with ill will can be defamatory." *See Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989) (citing *Lewis v. Evans*, 406 So.2d 489, 492 n. 2 (Fla. 2d DCA 1981)).

being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). Indeed, "[s]imply couching such [defamatory] statements in terms of opinion does not dispel" the implications of making false statements of fact. *Id.* It "would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *Id.* (quoting *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 64 (2d Cir. 1980)).

Furthermore, notwithstanding any protection available for pure opinions, "a 'mixed opinion,' which is based on undisclosed facts that infer the plaintiff has committed an illegal act, or one that damages his or her business reputation, is actionable." *Scott v. Busch*, 907 So. 2d 662, 668 (Fla. 5th DCA 2005). Even if the defendant "'states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.'" *Gottwald v. Bellamy*, No. 8:11-CV-447-T-24 AEP, 2011 WL 2446856, at *4 (M.D. Fla. June 15, 2011).

### A. Perring's Defamatory Statements Were Not Merely "Pure Opinion," but Rather Damaging Statements of Fact

Predictably, Perring now backpedals on his past public statements that MiMedx is a "100% fraud" in favor of a more conservative position. Perring believes that he and Defendants should not have to answer for their own actions under the cloak of a disclaimer that the authors were purely expressing opinions without guarantees as to accuracy and they maintained a financial interest in the decline of MiMedx's stock. Perring then contradicts that same argument by arguing that his reports were well-researched and supported by citations to evidence. Finally, he argues that he used enough "hyperbolic, qualifying, and loose" language so as to convey to the reader that his statements should not have been

understood as factual. However, Perring overlooks numerous allegations that more than sufficiently state a claim for libel against Defendants.

At the outset, Perring's arguments all fail as they do not address the numerous allegations regarding the defamatory statements of fact made by Defendants and Perring on their respective Twitter pages, which contain none of the purported disclaimer language in some of the Viceroy reports. Compl. ¶¶ 56, 67. The tweets referenced in the Complaint also generally do not cite to any evidence, nor do they contain "qualifying" language. For instance, no apparent disclaimer was made before Viceroy disseminated the false tweet, "54 of $MDXG sales force and management previously employed in kickback & bribery inducement scheme." *Id.* at ¶ 58. Likewise, no disclaimer proceeded Viceroy's false tweet stating "MiMedx / distributors change the SKU on labeling to represent a more expensive product. Hospitals were often charged 4-5x $MDXG." *Id.* at ¶ 59. In fact, Perring's Motion does not even reference his tweets. That shortcoming alone defeats the Motion.

In any event, Perring's statements in the "research reports" disseminated by Viceroy also subject him to liability regardless of his self-contradictory arguments. First, if a disclaimer was dispositive, a defendant would have blanket protection to "disclaim and defame"—*i.e.*, to make whatever defamatory statements it likes simply by preceding them with a disclaimer. That is not the law. *See, e.g., Nichols v. Item Publishers*, 309 N.Y. 596, 601 (1956) (rejecting disclaimer defense, as "if any commonsense construction of what was written justifies or supports a defamatory meaning, it will be for the jury, not the court on motion, to decide whether the writing was or was not defamatory"); *Ty v. Celle*, No. 95 Civ. 2631(MBM), 1997 WL 167041, at *3 (S.D.N.Y. Apr. 9, 1997) ("It remains for the trier of

fact to determine whether Celle's disclaimers . . . would be viewed by such persons as disingenuous attempts by Celle to evade responsibility for the allegedly defamatory statements); *Streips v. LTV Corp.*, 629 N.Y.S.2d 132, 134 (1995) ("The bare disclaimer that defendants had not prejudged plaintiff does not necessarily erase that defamatory implication"). Nor will "linguistic devices . . . guarantee immunity from defamation actions since, even where the utterance is 'couched in the language of hypothesis or conclusion,' it will still be actionable if it 'would be understood by the reasonable reader as [an] assertion[] of fact.'" *Silverman v. Clark*, 822 N.Y.S.2d 9, 15 (1st Dep't 2006).

Here, Perring's "reports" contained numerous factual statements. For example, he stated that MiMedx hoped to conceal Sean McCormack's (a current MiMedx employee) identity and position within the company, due to his former employment at Advanced BioHealing ("ABH"). Compl. ¶ 29. Perring stated that, despite McCormack's apparent seniority at MiMedx, he does not appear on MiMedx's website or have a "regular format MiMedx email address." *Id.* Yet, neither MiMedx nor McCormack hides McCormack's employment or position within the company, as McCormack displays both on his publicly-available LinkedIn profile. *Id.* Furthermore, McCormack retains a "regular format MiMedx email address." *Id.*

Perring also stated, as fact, that MiMedx participated in fraudulent sales practices based on allegations raised in a former employee's lawsuit that settled prior to publication. *Id.* at ¶ 33. Perring conveniently excluded the fact that this same former employee made explicit retractions of their prior statements and acknowledged their own error in making the allegations. *Id.*; *see also Gottwald*, 2011 WL 2446856, at *3 (holding plaintiff stated claim

8

for defamation where defendant published statement about prior lawsuit against plaintiff but omitted fact that the allegation in prior suit had been retracted).

Likewise, Viceroy's and Perring's tweets contained the same statement of facts, such as "We evidence sales to deceased doctors, more PODs, and more fraud" or that MiMedx's then-CEO and current General Counsel "violated Federal law" by forcing a former employee to make false statements, on the part of Viceroy, or stating that MiMedx was engaged in a kickback scheme through a specific physician-owned distributor, on the part of Perring. *See id.* at ¶¶ 61, 62, 69. These are factual statements, not protected pure opinions. *See Madsen v. Buie*, 454 So.2d 727, 729-30 (Fla. 1st DCA 1984) ("Under Florida law, a publication is libelous per se when it imputes to another a criminal offense amounting to a felony, or conduct, characteristics, or conditions incompatible with the proper exercise of one's lawful business, trade, profession, or office.").

Indeed, taken in their entireties, the challenged communications seek to convey that the speaker is credible in the arena of industry analysis and research, and knows facts that would suggest to a reasonable listener that the listener—like the speaker—would be likely to benefit by selling or taking a short investment position on MiMedx's stock. In other words, they are intended to be interpreted by a reasonable listener as factual summations of analysis and research into MiMedx's business practices and the value of MiMedx stock as an investment, as opposed to mere opinions about the company, which would carry little weight to a reasonable listener.[3] Furthermore, Perring's articles are purportedly supported by

---

[3] The fact that Defendants do not hide their short interest does not convey that the purported "research" is not objective, as Defendants claim. There is no point in publishing biased research that no reasonable listener would believe. As Defendants know, a reasonable listener would assume they

9

supposed "evidence." In fact, he identified each of these articles as research "reports" in the disclaimer, which garners more credibility than mere opinion pieces. Often, each article would compliment itself on its "comprehensive investigation" and fact gathering to support its in-depth analysis in alleged wrongdoing on the part of MiMedx. In all, the articles (at face value and certainly when viewed in a light most favorable to the allegations in the Complaint) were published with the intent to show its audience that each Viceroy report is well-researched and credible notwithstanding the form language contained in the disclaimers.

Perring also maintains that the articles at issue are not actionable because "they are backed by detailed citations to evidence supporting the authors' conclusions." ECF No. 11 at 12. However, Perring overlooks a critical point. "An important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks." *See Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th DCA 1986). Furthermore, "where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *Id.* at 606-07 (citing *Madsen*, 454 So.2d 727; *E. Airlines v. Gellert*, 438 So.2d 923 (Fla. 3d DCA 1983); *Smith v. Taylor Cty. Publ'g Co.*, 443 So.2d 1042 (Fla. 1st DCA 1983)). Here, Defendants did not present facts to their audience in a manner that would encourage informed investing. Defendants instead presented skewed information to fit their own narrative that MiMedx was engaged in unlawful conduct. For example, it is simply inaccurate that MiMedx "intentionally falsified

---

have chosen the side of the bet that they believe is most likely to profit based on their research. Thus, if anything, Defendants' short position would be interpreted as support for their assertions—not a reason to disbelieve them.

its representations to various government organizations." *See* Compl. ¶ 37-39. It is also inaccurate that MiMedx continued to do business with a supposed physician-owned distributor "even after the physician owner of that entity died in an automobile accident and the company was shut down." *See id.* at ¶¶ 46, 61.

Lastly, to the extent Perring suggests that none of Defendants' reports should be taken seriously[4] as they are riddled with such "qualifying and hyperbolic language" that no reader could "reasonably conclude that the challenged statements are anything other than expressions of opinion," this argument not only contradicts his prior arguments but fails on its face. Motion at 12-13. While hyperbolic rhetoric may qualify as protected opinion, this Court must "consider the circumstances in which the statement was expressed." *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002). Perring cherry-picked a few phrases from the reports in hopes that this Court would simply take him at his word. However, when viewed in context, the sole purpose of these articles was to inform readers of purported past and current malfeasance at MiMedx. *See Ford v. Rowland*, 562 So.2d 731, 735 (Fla. 5th DCA 1990) (nothing that courts must consider the full context of the alleged defamatory statement, the medium used, and the audience).

Again, as Viceroy, Perring hoped his work would be taken seriously, as he held Viceroy out to be a legitimate "research firm," whose research and analysis should carry weight in the investment community. For instance, the article entitled "MiMedx's

---

[4] Ironically, Perring himself confirmed online that they "@viceroyresearch take [their] work seriously," just days before filing the instant motion to dismiss. Realistic Principles (@AIMhonesty), *Twitter* (July 2, 2018, 2:56 PM EST), https://twitter.com/AIMhonesty/status/1013859075908489216 (last visited July 18, 2018).

employment of kickback & bribery scheme inducers makes it uninvestable," was intended to convey to readers that MiMedx hired numerous former ABH employees in order to carry on the kickback and bribery scheme from ABH to MiMedx. *See* ECF No. 1-5 (Exhibit 4). The article entitled "Bankruptcy & DOJ/FBI indictments of Physician Owned Medical Center inconvenienced MiMedx CPM channel stuffing program" was intended to show that MiMedx engaged in a fraudulent channel-stuffing scheme with its distributors, and that this scheme would have continued, had owners of a Dallas, Texas physician-owned hospital not been indicted on charges of bribery and facilitating kickback payments to physicians. *See* ECF No. 1-12 (Exhibit 11). Likewise, the article entitled "Viceroy release MiMedx EOB emails," was intended to inform readers of MiMedx employees instructing physicians on how to falsify Medicare codes in order to fraudulently increase federal reimbursements. *See* ECF No. 1-24 (Exhibit 23). Certainly, this is "not the sort of loose, figurative, or hyperbolic language which would negate the impression" that Defendants were seriously accusing MiMedx of both corporate malfeasance and violation of various federal laws. *Milkovich*, 497 U.S. at 21. For these reasons, and because MiMedx has sufficiently stated a claim for libel under Florida law, Perring's Motion should be denied.

### B. MiMedx Has Stated Sufficient Facts to Establish Actual Malice

Perring's sole argument for dismissing MiMedx's libel claim with regard to actual malice is that MiMedx's allegations were conclusory and that MiMedx stated no facts to support a finding of actual malice. Motion at 14-15. It appears that Perring has again failed to analyze MiMedx's pleading in its entirety, because the Complaint is replete with specific allegations of actual malice on the part of Defendants. *See* Compl. ¶¶ 22, 24, 27-29, 31, 33,

36, 39-40, 51, 53-55, 57-59, 62-64, 69, 72-73, and 75-76. Perring also incorrectly asserts that this specific issue has already been litigated and resolved in Perring's favor in a matter pending in the Southern District of New York ("New York Action"). *See* Case No. 1:17-cv-07568-PGG-KHP (S.D.N.Y. Oct. 4, 2017). All of Perring's contentions are misguided.

A libel defendant acts with "actual malice" when he makes a defamatory statement of fact "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Deliberate falsification is clear evidence of actual malice. *See Times Publ'g Co. v. Huffstetler*, 409 So.2d 112, 113 (Fla. 5th DCA 1982) (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 153 (1967)). If the plaintiff does not have evidence to show deliberate falsity, they may also show that the statements at issue were made with a "high degree of awareness of . . . probable falsity," *Garrison v. Louisiana*, 379 U.S. 727, 730 (1968), or the defendant "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). While ill will is irrelevant to the actual malice inquiry, "ill will or motive, when combined with other evidence, may amount to actual malice." *Don King Prods., Inc. v. Walt Disney Co.*, 40 So.3d 40, 44 (Fla. 4th DCA 2010) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989)).

Contrary to Perring's contention that MiMedx made conclusory allegations regarding actual malice, MiMedx alleged specific facts to show that Defendants made deliberately false statements of fact, as well as false statements made with reckless disregard for the truth. For instance, Perring did not even address the specific allegations regarding Defendants' impersonation of current MiMedx employees. *See* Compl. ¶¶ 71-76. Therein, MiMedx

alleged that Defendants created two falsified online accounts, one Twitter account and one anonymous e-mail account, to falsely impersonate MiMedx employees, communicate alleged fraudulent conduct on the part of MiMedx and to further substantiate the statements previously made in Defendants' reports. *Id.* at ¶¶ 72, 75. Without any question, these statements were deliberately false as none of the Defendants, including Perring, were former employees of MiMedx nor would any of the Defendants have direct insight into MiMedx's business operations. Defendants employed a similar tactic against another company through their former short-selling outfit, Zatarra Research. *Id.* at ¶ 74.

MiMedx's allegations relating to Sean McCormack's former employment at ABH and subsequent criminal indictments of individuals other than McCormack also show actual malice. *See* Compl. ¶¶ 25-28. Defendants, for the purpose of maligning MiMedx's employee, stated that McCormack was responsible for the unlawful kickback scheme that took place at ABH. Dubbing him the "$350-million-dollar man," Defendants stated, while distastefully plastering his image on the report, that McCormack was an "instrumental figure" in the kickback scheme, even when it had zero evidence to support such a bold assertion. *Id.* at ¶ 25. Indeed, the public record directly contradicts these libelous statements. Although several individuals from ABH were indicted and pleaded guilty, McCormack was not among those individuals. *Id.* at ¶ 27. This publicly available information was purposefully left out of Defendants' articles because it better suited their narrative that McCormack carried the scheme with him to MiMedx. *Id.* The same lawsuits that Perring read and referenced in the challenged reports, establish that four individuals, none McCormack, pleaded guilty to criminal charges relating to the ABH kickback scheme. *Id.* at

¶ 26. In light of his knowledge, Perring's factual statement that McCormack was an "instrumental figure" in a fraudulent scheme was made with actual malice. Defendants made these statements of fact with a high degree of awareness of more than probable falsity, in that they were well aware that McCormack had no involvement with the ABH kickback scheme, despite the abundance of publicly available information—the same information Perring purports to rely upon exclusively—demonstrating otherwise.

Defendants' report on MiMedx's purported relation to Stingray Medical, a physician-owned distributor, and Defendants' report on MiMedx's supposed support of "up-coding" to facilitate Medicare fraud, each supply further evidence of actual malice. Compl. ¶¶ 46, 50-51. With respect to Stingray Medical, Defendants stated that in late 2016, and well after the entity's owner passed away, MiMedx continued to do business with this distributor after its dissolution. *Id.* at ¶ 46. On Twitter, Defendants even characterized this as MiMedx doing business with "deceased doctors." *Id.* at ¶ 61. However, Defendants blatantly misidentified Stingray Medical, as MiMedx was not involved with the named distributor, but rather a different entity. *Id.* at ¶ 46. Notably, even after MiMedx called out this inaccuracy, Defendants refused to retract the statement, continuing to publish it on their website. *Id.* With regard to "up-coding" and Medicare fraud, Defendants stated that they obtained direct evidence of MiMedx employees showing physicians how to fraudulently increase Medicare reimbursements by way of an Explanation of Benefits ("EOB") form. *Id.* at ¶ 50. However, the referenced EOB pertained to a commercial provider, not Medicare. *Id.* at ¶ 51. This commercial provider indeed authorized reimbursement for the use of MiMedx products through certain coding specified by the physician. *Id.* Thus, Defendants deliberately

15

characterized an entirely lawful process as Medicare fraud on the part of MiMedx. As shown above, all of these direct examples show that MiMedx has more than sufficiently alleged actual malice in the Complaint, and accordingly, Perring's Motion should be denied.

Lastly, to the extent Perring argues that MiMedx's allegations as to actual malice are "the identical allegations that the court rejected in MiMedx's New York defamation suit," he is incorrect. The magistrate judge (not the district judge, who has yet to rule) in the New York action did not rule on the statements made by Viceroy at all. Rather, in addressing statements made by a completely different defendant, the magistrate judge determined that because the defendant discussed his allegations with MiMedx before stating them to an individual shareholder, he could not have acted with malice.[5] *MiMedx Grp., Inc. v. Sparrow Fund Management LP*, No. 17-CV-07568 (PGG) (KHP), 2018 WL 847014, at *8 (S.D.N.Y. Jan. 12, 2018). Here, Perring did not discuss his allegations with MiMedx nor did he state them to a single shareholder. Rather, Perring disseminated over twenty purported "research reports" to the investing public at large, containing numerous statements that he knew to be false. Moreover, there was no allegation in the New York action that in *addition* to disseminating false claims about the company, the defendant had also created fake e-mail and social media accounts to impersonate MiMedx employees and create the appearance that his false claims had merit. In the instant case, of course, Perring is accused of doing exactly that. Compl. ¶¶ 71-78. Perring's consciously false impersonation of MiMedx employees in an

---

[5] MiMedx has objected to this finding by the magistrate judge in the New York action on grounds that are not pertinent here. The salient point is that there is no reason to import the magistrate judge's discussion on actual malice into this case, where the facts are completely different.

attempt to drum up support for his bogus claims further distinguishes this matter from the New York action and establishes "actual malice."

## II. MiMedx Has Sufficiently Stated a Claim Under FDUTPA

Lastly, relying on wholly inapplicable, non-binding authority, Perring incorrectly suggests that MiMedx's claim under FDUTPA is "based entirely on the alleged defamatory statements at issue in its libel claim." Motion at 15. This leads to his equally incorrect conclusion that MiMedx's FDUTPA claims should be subject to the same defenses as MiMedx's libel claim, "including the First Amendment defenses." *Id.* To be clear, FDUTPA is an independent claim with elements separate from a claim for libel. *See Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1262 (N.D. Fla. 2007) ("True, there is some overlap between the two causes of action, but the mere fact that conduct gives rise to more than one type of claim does not prevent it from being an FDUTPA violation."); *see also Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 1302, 1305 (S.D. Fla. 2008) (district court finding dismissal of FDUTPA claim arising under same operative facts as a defamation claim "to be inappropriate at this stage of the litigation.").

To state a claim under FDUTPA, MiMedx must plausibly allege (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1376 (M.D. Fla. 2017). As MiMedx alleged—and as Perring ignored or overlooked—one of Defendants' methods of disseminating false, misleading, and defamatory information was through their impersonation of current MiMedx employees "in order to falsely promote the view that the company was engaged in fraud." *See* Compl. ¶ 71-76. This is an unfair and deceptive practice prohibited under FDUTPA.

*See* Fla. Stat. § 501.204(1). Specifically, MiMedx alleged that Defendants created a fake Twitter account called "MDXG Whistleblower" at or around the same time of the publication of their first defamatory article. This account (@mimdexwhistleb1) remains publicly available. Through this account, Defendants masqueraded as a current MiMedx employee purporting to be a whistleblower against alleged fraud committed by MiMedx. Compl. ¶ 73. Indeed, MDXG Whistleblower's first tweet was—not so coincidentally—to compliment Viceroy on the accuracy of its report. *Id.* In an attempt to further bolster its credibility, Defendants additionally created a fake e-mail account through Protonmail, which is an anonymous, fully encrypted email service protected by Switzerland's information privacy laws. *Id.* at ¶ 75. Through this e-mail account identified as "currentemployee@protonmail.com," Defendants purported to be a current MiMedx employee, and had been "for some years," and repeated the same false and defamatory statements previously reported in its articles and tweets to a number of recipients. *Id.*

Perring simply cannot rely on the First Amendment to protect him from the methods of his dissemination of false information. *See Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So.3d 164, 167 (Fla. 4th DCA 2015). In *Caribbean Cruise Line*, the Fourth District Court of Appeal reversed the trial court's dismissal of the plaintiff's FDUTPA claim when the trial court incorrectly treated the Better Business Bureau's ("BBB") statements about Caribbean Cruise Line, Inc.'s ("Caribbean Cruise") as the same as BBB's representations as to the methods they employ when evaluating businesses. *Id.* Caribbean Cruise alleged, among other things, that BBB falsely represented to consumers that it "conducts an investigation into the businesses it grades," "it uses sixteen

factors to determine a grade," and that "the complaints it uses are from customers." *Id.* The court of appeal determined that since these methods are not "disputes with opinions issued by BBB, but instead, are disputes with the representations that BBB makes, and the methods it employs, in conducting its own business," that the First Amendment could not apply based on the facts alleged. *Id.* The same result in *Caribbean Cruise Line* should occur here, as MiMedx additionally challenges (which Perring ignored) the methods of Defendants' dissemination of false information through fraudulent online accounts, which violates FDUTPA. Moreover, the language of the statute requires that FDUTPA be liberally construed to "protect the consuming public and legitimate business enterprises" from individuals like Perring and Defendants who engage in deceptive and unfair trade practices. Fla. Stat. § 501.202.

As a direct result of Defendants unlawful actions described herein, MiMedx suffered (and continues to suffer) harm. *Id.* at ¶ 86. Accordingly, MiMedx has sufficiently stated a claim under FDUTPA and Perring's Motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Perring's Motion should be denied.

Respectfully submitted, this __19th__ day of July, 2018.

s/ Samuel J. Horovitz

**ROGERS TOWERS, P.A.**
Christopher C. Hazelip
Florida Bar No. 438049
Samuel J. Horovitz
Florida Bar No. 059015
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
chazelip@rtlaw.com (email)
shorovitz@rtlaw.com (email)

**WARGO & FRENCH LLP**
Joseph D. Wargo
Florida Bar No. 934194
David M. Pernini, *pro hac vice*
Georgia Bar No. 572399
999 Peachtree St. NE, 26th Floor
Atlanta, GA 30309
(404) 853-1500 (telephone)
(404) 854-1501 (facsimile)
jwargo@wargofrench.com (email)
dpernini@wargofrench.com (email)

*Counsel for Plaintiff MiMedx Group, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document has been filed with the Court via CM/ECF with a copy served via email on all counsel of record on July 19, 2018.

s/ Samuel J. Horovitz
Attorney